IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

4 DAKOTA VENTURES, LLC,
a Florida limited liability company
     Plaintiff,

vs.                           Case No.:   3:15cv51/MCR/EMT

SEGER COMMERCIAL PROPERTIES, LLC,
a Florida limited liability company;
CRESTVIEW HELEN BACK, LLC,
a Florida limited liability company;
HELEN BACK AGAIN CRESTVIEW, LLC,
a Florida limited liability company;
DUDE-N-BRAH, INC. a Florida corporation
d/b/a/ Helen Back; CHRISTOPHER SEHMAN
a/k/a CHRIS SEHMAN; YENTI SEHMAN;
REWARDS NETWORK ESTABLISHMENT
SERVICES, INC., a Delaware corporation; and
FIRST CITY BANK OF FLORIDA, A Florida corporation,
     Defendants,

vs.

TRIFECTA CONSULTING, LLC,
A Florida limited liability company;
CRABISLAND.COM, LLC, a Florida
limited liability company; ALS ASSETS,
LLC, a Florida limited liability company;
L.C.S. GENERAL HOLDINGS, LLC,
A Florida limited liability company;
ROBERT H. POWELL, an individual;
BRIDGETTE CARNLEY, an individual; and
PRIME'D IN DESTIN, LLC, a Florida limited
liability company
     Third Party Defendants.
_____/

## REPORT AND RECOMMENDATION

This case is before the court upon Christopher Sehman's Motion to Vacate Orders Granting Motion for Assignment (ECF No. 134) and Plaintiff 4 Dakota Ventures, LLC's Response in Opposition (ECF No. 136).

## Procedural History

Relevant to the instant motion, on October 30, 2015, the court entered judgment in this case in favor of then-Plaintiff NWE16, LLC, against various Defendants, including Christopher Sehman ("Sehman"), jointly and severally, in the amount of $300,000. ECF No. 44. Current Plaintiff 4 Dakota Ventures, LLC ("4 Dakota") was substituted as a party plaintiff in September of 2018, and the district court granted its motion for writ of garnishment on October 9, 2018. ECF Nos. 68, 69, 72.

On June 9, 2020, Plaintiff 4 Dakota Ventures, LLC ("4 Dakota") filed a Motion to Commence Proceedings Supplementary to Execution and to Implead Third Parties. ECF No. 91. The district court referred the motion to the assigned magistrate judge for preparation of a report and recommendation. ECF No. 92. The court denied the motion without prejudice on July 1, 2020, because it failed to comply with certain jurisdictional prerequisites. ECF No. 93.

On July 2, 2020, 4 Dakota filed an "Amended Motion to Commence Proceedings Supplementary to Execution and to Implead Third Parties."   ECF No. 94.   According to Plaintiff, Sehman or his companies had allegedly actively attempted to avoid the effect of the court's judgment and placed assets beyond the reach of creditors, including Plaintiff.   Part of the relief requested was that the court assign to Plaintiff 4 Dakota Sehman's rights and interests in Okaloosa County Case 2018 CA 2080, *Christopher Sehman, et al v. William Todd Schweizer, et al* (the "Schweizer lawsuit").[1]   Sehman did not respond, and on July 20, 2020, the court recommended that the requested assignment be denied without prejudice because 4 Dakota Ventures neither filed a memorandum in support of its request for assignment nor included points and authorities in its motion showing it was entitled to this relief.   *See* ECF No. 95 at 7.   The court also identified numerous concerns with the Plaintiff's request and advised that its concerns should be addressed in any renewed motion.   *Id.* at 8-9, n.3.   On August 24, 2020, the district court adopted the recommendation, and afforded 4 Dakota fourteen days to file an interpleader complaint adding the third-party defendants.   ECF No. 102.

---

[1] Plaintiff also sought to implead third parties to discover Sehman's assets in aid of execution of this court's judgment in this case.

In the meantime, on August 3, 2020, 4 Dakota filed its "Renewed Motion to Obtain Assignment of Defendant's Rights and Interests in Case No. 2018 CA 2080 F," (ECF No. 98) and on August 12, 2020, it filed a Motion for Sanctions against Defendant Sehman due to his failure to appear for a scheduled deposition (ECF No. 100). Two months elapsed and Sehman did not respond to either motion. The district court referred the matter to the undersigned on October 22, 2020, and this court entered an order directing Sehman to file a response to the pending motions within seven (7) days. ECF Nos. 111-113. As of that date, the record reflects that Sehman had three attorneys of record: Jennifer Elise Ffrench, Parker Bentley Smith, and Richard Houston Powell, each of whom were being sent electronic notifications by the court.[2] Because Sehman had counsel of record, the order was not sent to Sehman personally.

On November 2, 2020, still having still received no response from Sehman, the undersigned provisionally granted the motion for sanctions. ECF No. 114. The order specifically noted Sehman was represented by counsel. *Id.* at 2. It also directed 4 Dakota to file a supplement setting forth the relief sought as a result of Sehman's failure to appear. On the same date, after reviewing the record, the

---

[2] Richard H. Powell is also a third-party defendant in this case. *See* ECF No. 103.

Case No.: 3:15cv51/MCR/EMT

undersigned recommended that 4 Dakota's unopposed motion to obtain assignment of rights in the Sehman Lawsuit be granted.    ECF No. 115.    Sehman was afforded fourteen days to file objections to the Report and Recommendation.    Court records reflect the recommendation was electronically provided to Sehman's attorneys of record.

Eight days later, on November 10, 2020, attorney Parker Bentley Smith filed a Motion to Withdraw as counsel for Sehman, citing irreconcilable differences with his client.    ECF No. 120.    Mr. Smith did not explain the scope of his representation or address the pending motions for sanction and assignment.    His motion to withdraw reflects service on Sehman, via U.S. mail, and on attorneys Robert Beasley (counsel for 4 Dakota) and Richard Powell via email.    *Id.* at 2.    On November 12, 2020, Mr. Smith filed an amended motion for leave to withdraw.    ECF No. 122. The amended motion added that Smith had conferred with "counsel for Plaintiff and Chris Sehman" regarding the relief requested and "counsel Robert Beasley, Esq. [co-counsel for 4 Dakota], Jennifer Copus, Esq. [Sehman's state court counsel (see ECF No. 128 at 1) and counsel for two of the third-party defendants in this case] and Richard H. Powell, Esq. [counsel for Sehman and himself a third-party defendant]

do not oppose the requested relief." *Id.* at 2.[3]    Sehman's position was not

mentioned.

Also on November 12, 2020, attorney Richard Powell filed a Motion for

Leave to Withdraw on behalf of himself and his former associate Jennifer E. Ffrench.

ECF No. 121.    Mr. Powell explains that he and Ms. Ffrench were retained in the

original foreclosure action and represented Sehman and other defendants through

the entry of Deficiency Judgment in 2015 (ECF No. 44).    Mr. Powell states that he

contacted Sehman in 2018 when Powell received documents relating to a writ of

garnishment against Sehman, and he instructed Sehman to engage separate counsel

for that action.    ECF No. 121 at 3.    Sehman then hired attorney Parker B. Smith

who filed an answer and successfully represented Sehman in that matter.    Mr.

Powell further explains that neither he nor Ms. Ffrench had been retained for, or

were obligated to represent Sehman in, the proceedings supplementary (into which

Powell had been interpleaded as a third-party defendant).    Finally, the motion

reflects that Powell conferred with Sehman, and attorneys Beasley, Smith and

Copus, none of whom opposed the relief requested.    *Id.* at 4.

---

[3] The motion also states "Plaintiff (sic) shall have thirty (30) days to obtain new counsel" and "Defendant can be served at his last known address."    ECF No. 122 at 2.

On November 16, 2020, the undersigned entered an order granting both motions to withdraw and directing the clerk to send Sehman a copy of the order using two physical U.S. mail addresses and two email addresses provided by counsel. ECF No. 123. The court also entered an order scheduling a hearing on Sehman's failure to appear at his deposition. ECF No. 124. Both orders were mailed and emailed to Sehman at the same four addresses.

Sehman appeared for the December 2, 2020 hearing, and he was ordered to appear for deposition on December 15, 2020. ECF No. 125.

Sehman did not directly address 4 Dakota's August 3, 2020 motion for assignment of rights until December. Sehman's December 8, 2020 letter to the undersigned reached the court on December 17, 2020. ECF No. 128. Although not styled as a motion, in the letter Sehman states he cannot afford a federal attorney to prevent 4 Dakota from attaching to Sehman's civil claim, and he asks for "some time so that [he] may first get an answer in Circuit Court." *Id*. at 1.

On January 6, 2021, sixty days after the entry of the report and recommendation and absent any additional filings from Sehman, the district court adopted the recommendation that the motion to obtain assignment of rights in the Sehman lawsuit be granted. ECF No. 129. It afforded 4 Dakota seven days to draft

and submit a proposed order.   On January 15, 2021, the district court entered a final order granting the motion for assignment.   ECF No. 130.

Sehman filed nothing further in this case until March 8, 2021, when he filed, through attorney Natasha Revell, a suggestion of bankruptcy.   ECF No. 131.   The district court entered a stay.   ECF No. 132.   Sehman, represented by attorneys Revell and Teresa Marie Dorr, has now moved to vacate the district court's order granting the motion of assignment.[4]   ECF No. 134.   Plaintiff 4 Dakota responded in opposition (ECF No. 136), and the district court referred the case to the undersigned for consideration, including a hearing if necessary.   ECF No. 137.

### Discussion

Sehman asks that the court's order of assignment (ECF Nos. 129, 130) be vacated pursuant to Fed. R. Civ. P. 60 and 28 U.S.C. § 1655.   He claims 4 Dakota's brief to the court misstated Florida law, failed to reveal material information pertinent to the ruling, to wit, the relationship between 4 Dakota and Schweizer, and failed to provide notice to numerous parties in interest, which parties are currently among the creditors in Sehman's bankruptcy proceeding.   ECF No. 134 at 3.   The Schweizer Lawsuit, in which Sehman seeks damages in excess of $1.5 million, is

---

[4] Sehman filed a Notice of Filing of the instant motion, as well as a copy thereof, in the pending bankruptcy case. N.D. Fla. Bankruptcy Case 21-30141-KKS, ECF No. 54.

the single largest asset in his estate and, Sehman asserts, the asset should be administered for the benefit of all his creditors.   ECF No. 134 at 3-4.

The Schweizer Lawsuit

According to Sehman's affidavit, he filed for bankruptcy after a failed attempt to privately restructure his business operations through a purchase and sale agreement with William Todd Schweizer.   ECF No. 134-1 at 2.   Sehman had owned several successful restaurants and bars under the name "Helen Back."   *Id.* at 3.   In 2016, his business unexpectedly lost key bookkeeping staff, resulting in the failure to pay approximately $140,000.00 in Florida sales tax over a period of two months.   After interest and penalties accrued, Sehman owed $300,000.00.   He paid $180,000.00 towards that balance in 2016 and 2017, but he missed a payment in fall of 2017 due to lost revenue as a result of Hurricane Irma.   As a result, the Florida Department of Revenue shut down the liquor license at four of his locations, resulting in an additional decrease in revenue.

In November of 2017, Schweizer, whom Sehman knew from Schweizer's affiliation with Beach Community Bank, contacted Sehman and offered to help with his financial difficulties.   ECF No. 134-1 at 3.   Sehman and Schweizer negotiated a purchase and sale agreement with the goal of Sehman paying his creditors and

getting the business back on track.   *Id.*    Of the total purchase price of $450,000.00,
Sehman intended $235,000.00 to be paid directly to his creditors, including the
Florida Department of Revenue.   *Id.* at 4.   Schweizer made a contract deposit and
he and Sehman met to sign the purchase and sale agreement in January of 2018.
During the meeting, Schweizer excused himself, taking with him all the signed
copies of the agreement.   Schweizer subsequently took possession of all Sehman's
business locations, property and equipment, but he did not honor the terms of the
purchase and sales agreement, and he did not make the requirement payments other
than the initial deposit payment of less than $50,000.00.   Sehman sued Schweizer
in state court for the breach of contract, tort, conversion and other causes of action
in early 2018.   *Id.* at 3.

Sehman asserts that Schweizer attempted to derail the state lawsuit against
him using confidential information Schweizer had obtained during the purchase
negotiations.   ECF No. 134-1 at 4.   One of the provisions of the purchase and sale
contract was that Schweizer was to pay off the judgment in this case in favor of
NWE16, LLC, which was a lien against both Sehman and certain assets that were
the subject of the purchase and sale agreement.   *Id.* at 5.   Sehman had revealed
during the purchase/sale negotiations that NWE16 had agreed to accept $40,000 in

Case No.:   3:15cv51/MCR/EMT

full satisfaction of its $300,000.00 judgment against Sehman.   However, instead of fulfilling the terms of the contract to make the settlement payment in satisfaction of the judgment, Schweizer "purchased" the $300,000.00 judgment from NWE16, in the name of 4 Dakota, an LLC Schweizer had organized in 2009, for $40,000.00.

Sehman asserts, as he does before the bankruptcy court, that 4 Dakota is essentially Schweizer's alter ego.   In support of this position, he notes that Schweizer was the only manager listed for 4 Dakota until April of 2018, when Schweizer's son Joshua T. Schweizer was added as a second manager.   ECF No. 134-1 at 5, 7, 8.   Shortly thereafter, on June 26, 2018, Schweizer was removed as a manager of 4 Dakota, leaving Joshua Schweizer and Brenda Will as sole managers, although Schweizer remained the registered agent.   *Id.* at 5, 9.   W. Todd Schweizer was removed as a registered agent for 4 Dakota on April 26, 2021.   *See* N.D. Fla. Bankruptcy Case 21-30141, ECF No. 56 at 6 (Sehman's April 29, 2021 Motion for Sanctions for Violation of the Automatic Stay); *but see* N.D. Fla. Bankruptcy Case 21-30141, ECF No. 85 at 2 (June 11, 2021 Order Granting Motion for Sanctions for Violation of the Automatic Stay "does not address the question of whether 4 Dakota Ventures is the alter ego of William Todd Schweizer"[5]).   In any event, Sehman

---

[5] Sehman asserted in his motion for sanctions that 4 Dakota, Schweizer, and attorneys Robert Beasley and Dewitt Clark and their law firm Litvak Beasley willfully failed to inform the state court in the Schweizer Lawsuit that the

complains, 4 Dakota failed to disclose the relationship between it and Schweizer, and the apparent conflict of interest, when moving in this court for the assignment of Sehman's rights in the Schweizer lawsuit.

Sehman's Legal Argument

Sehman requests relief pursuant to Federal Rule of Civil Procedure 60(b). This rule provides that on motion and just terms, the court may relieve a party from a final judgment, order or proceeding for the following reasons:

(1) mistake, inadvertence, surprise or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

---

case had been stayed by the filing of the bankruptcy case. N.D. Fla. Bankr. Case 21-30141, ECF No. 56 at 4-6. On March 5, 2021, the state court held a hearing on 4 Dakota's motion to substitute it for Sehman in the Schweizer case. The court took the matter under advisement without rendering a decision. On March 7, 2021, Sehman filed for bankruptcy and the automatic stay went into effect. On April 18, 2021, the state court requested counsel submit a proposed order on the Motion to Substitute, and on April 23, 2021 counsel submitted a proposed order substituting 4 Dakota for Sehman and substituting its law firm as counsel in the case, instead of informing the state court about the stay. On April 26, 2021, 4 Dakota filed an updated Annual Report with the Florida Secretary of State removing William Schweizer as a registered agent for 4 Dakota. The state court entered the order submitted by Litvak Beasley on April 27, 2021. On the same date, Sehman's attorney Jennifer Copus sent an email to the state court suggesting that the order could not be properly entered due to the pending bankruptcy and requesting that it be recalled. Attorney Clark responded for 4 Dakota that he disagreed, because the order was "purely ministerial" since the state court had held the hearing on the motion for substitution before the bankruptcy petition was filed. *Id.* The bankruptcy court held a hearing on Sehman's motion for sanctions after which it agreed with Sehman and found there was "good and sufficient cause for the partial granting of the relief requested, while reserving *other issues identified by the Court for a later evidentiary hearing*." N.D. Fla. Bankr. Case 21-30141, ECF No. 85 at 1 (emphasis added). One of the issues appears to be the relationship between 4 Dakota and W.T. Schweizer. The bankruptcy court entered its Findings of Fact and Conclusions of Law on August 10, 2021, in an excoriating opinion finding the stay violation of 4 Dakota Ventures, Robert O. Beasley, Dewitt D. Clark and the law firm of Litvak Bealey Wilson and Ball, LLP were willful, awarding Sehman damages including attorneys' fees and costs and leaving open the question of punitive damages. N.D. Fla. Bankr. Case 21-30141, ECF No. 98 at 20. Supplemental briefing is underway.

Case No.:  3:15cv51/MCR/EMT

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgement is void;

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). Sehman requests relief under subsections (3), (4) and (6) of the Rule, as well as 28 U.S.C. § 1655.

First, Sehman contends that 4 Dakota, "knowing that [Sehman] was unrepresented by counsel, misrepresented to this Court both the applicable Florida statute and the state of Florida law in numerous and egregious respects so as to constitute 'misconduct' within the meaning of Fed. R. Civ. P. 60 and/or fraud on the court." ECF No. 134 at 8. Sehman contends in his affidavit that he ran out of funds to defend this action and was left unrepresented in or around November 2020. ECF No. 134-1 at 5. His self-characterization as "unrepresented" is somewhat misleading. The district court's orders on the motion for assignment were entered on January 6 and January 15, 2021, after counsel had withdrawn and Sehman was no longer represented. However, 4 Dakota's Rewed Motion to Obtain Assignment of Rights (ECF No. 98), to which Sehman never responded, was filed on August 3,

2020, while Sehman still had counsel, at least in name, although, as noted above, the scope of Mr. Smith's representation was unclear from his motion to withdraw.

Sehman next maintains that instead of the direct transfer of the Schweizer lawsuit from Sehman to 4 Dakota, the proper mechanism would have been a sheriff/marshall levy and sale as set forth in Chapter 56, Florida Statutes. Sehman asserts that the proposed order submitted by 4 Dakota to the district court (which is not part of the record) included neither due process protections nor safeguards for other creditors, as provided by Chapter 56. ECF No. 134 at 8-9. He states that this oversight in 4 Dakota's submission was particularly egregious due to its failure to disclose the relationship between 4 Dakota and Schweizer. Had 4 Dakota successfully substituted itself as the plaintiff in the Schweizer lawsuit, this "would have had the effect of destroying the value of this asset for all creditors and parties in interest." ECF No. 134 at 10. As plaintiff, 4 Dakota could have settled or dismissed the Schweizer lawsuit as it saw fit. Sehman also contrasts the $300,000.00 face value of the judgment in this case (which 4 Dakota purchased for $40,000.00 in alleged violation of the purchase and sale agreement Sehman had with Schweizer), with the potential $1.5 million value of the Schweizer lawsuit. *Id.*

Case No.:   3:15cv51/MCR/EMT

Sehman also claims that 4 Dakota misled this court by relying on the so-called "diligent creditor" rule[6] to assert its alleged priority over other judgment creditors as to the Schweizer lawsuit, when this rule was abrogated by the statutory enactment of the judgment lien certificate process in 2016. *See* Fla. Stat. § 55.202 *et seq.* Section 55.202(3) provides that the priority of a judgment lien is established at the time and date the judgment lien certificate is filed. A diligent creditor no longer is entitled to absolute priority over other creditors. With respect to payment, under section 56.27 Florida Statutes, a creditor who successfully aids in the execution of a levy is entitled only to $500 as liquidated expenses.[7] Fla. Stat. § 56.27(1). Otherwise, any property sold under execution is to be paid "in the order of priority to any judgment lienholders whose judgment liens have not lapsed." Fla. Stat. § 56.27(2). Furthermore, Sehman asserts that 4 Dakota's judgment lien certificate

---

[6] *See Salina Manufacturing Co. v. Diner's Club, Inc.¸* 382 So. 2d 1309 (3d DCA 1980) (holding that judgment creditor which, through supplementary proceedings, was responsible for subjecting property of debtor to execution had priority in the satisfaction of its judgment from that levy, even over another judgment creditor which had first delivered its writ of execution to the sheriff).

[7] Section 56.27(1) provides in part:

All money received under executions shall be paid, in the order prescribed, to the following: the sheriff, for costs; the levying creditor in the amount of $500 as liquidated expenses; and the priority lienholder under s. 55.10(1) and (2), s. 55.202, s. 55.204(3), or s. 55.208(2), as set forth in an affidavit required by subsection (4), or the levying creditor's attorney, in satisfaction of the judgment lien, if the judgment lien has not lapsed at the time of the levy.

had expired before the district court's order, so it had no priority over any other lienholder.[8]   Thus, any suggestion otherwise was incorrect.

Sehman next argues that the form order 4 Dakota provided to the district court was improper because it neither performed nor provided for the procedures set forth in section 56.27(4), Florida Statutes with respect to personal property levies.   ECF No. 134 at 11-12.   This section provides, among other things, that the levying creditor must provide the sheriff with an affidavit setting forth pertinent information before publication or posting of the notice of sale of the asset.

Finally, Sehman posits that it is an actual conflict of interest to assign a litigation matter to a creditor who is actually the defendant in the same litigation, which, he argues, is the case here in light of the relationship between Schweizer and 4 Dakota.   *See Donan v. Dolce Vita Sa, Inc.,* 992 So. 3d 859 (Fla 4th DCA 2008). In *Donan*, a lawsuit by plaintiff Dolce Vita against defendant Donan was levied upon by the sheriff and sold at a sheriff's sale to defendant Donan, who was also a creditor

---

[8] NWE 16, LLC, 4 Dakota's predecessor, recorded judgement lien certificate JI5000995726 with the State of Florida on December 2, 2015.   It lapsed on December 2, 2020.   *See Fla. Stat.*, § 55.204(1) (judgment lien becomes invalid 5 years after the of filing the judgment lien certificate); *see also* Florida Division of Corporations Judgment Lien Detail, Exh. to Sehman Declaration ECF No. 134-1 at 10-15).   Florida Statutes permit a creditor to acquire a second judgment lien by filing a new judgment lien certificate within 6 months before or 6 months after the scheduled lapse of a lien.   Fla. Stat. 55.204(3).   The second judgment lien acts as a new judgment lien rather than a continuation of the original judgment lien, and its effective date is the date and time on which the judgment lien certificate is filed. *Id.*.   Sehman represents that at least as of the date of filing his motion, the lien had not been renewed.

of plaintiff Dolce Vita.  Dolce Vita moved to quash the sheriff's sale due to the conflict of interest with defendant having purchased the lawsuit against himself, which would allow him to terminate Dolce Vita's cause of action without any adjudication on the merits.  Dolce Vita based its argument on the premise that it was inequitable and contrary to public policy to allow Donan to use the proceedings supplementary to purchase Dolce Vita's lawsuit and then dismiss it.  The court agreed and dismissed the sale.  In doing so, it relied on a Washington State case with similar facts in which the party purchasing the lawsuit "openly admitted to the trial court that his intention was to take away the other side's ability to prosecute their case." *Id.*, 992 So. 2d at 861 (citing *Paglia v. Breskovich*, 11 Wash.App. 142, 522 P.2d 511 (1974)).  Sehman argues that allowing 4 Dakota to control the Schweizer lawsuit would foster a similarly inequitable result.  4 Dakota would be in a position to dismiss the lawsuit, protecting Schweizer to the detriment of Sehman's many other creditors.  In the interest of all Sehman's creditors, Sehman argues, the Schweizer lawsuit should be properly administered within the context of the pending bankruptcy case without interference of a creditor who not only is not a priority lienholder but also has a conflict of interest.

Separate and apart from Rule 60, Sehman argues that the order of assignment should be vacated because it was issued without service of process having been made on numerous interested parties whose rights were materially affected by the order. ECF No. 134 at 14.   Specifically, Sehman identifies lienholders including the State of Florida, the Department of Revenue, the United States Internal Revenue Service, Beach Community Bank, Performance Food Group, Inc., and Lamar Texas Limited Partnership, each of whom, he states, had a superior lien to 4 Dakota's lapsed Judgment Lien Certificate at the time the district court's order of assignment issued, and none of whom were served or given notice of the proceedings supplementary. Sehman, as trustee of the Chapter 11 bankruptcy, asserts standing to raise these claims on behalf of the creditors of his estate.   *See* 11 U.S.C. § 544; 11 U.S.C. § 1107.

Lastly, Sehman asserts that relief is independently appropriate pursuant to 28 U.S.C. § 1655.   This statute provides that in "an action in a district court to enforce any lien upon or claim to . . . personal property within the district," any defendant who is not "personally notified may, at any time within one year after final judgment, enter his appearance, and thereupon the court shall set aside the judgment."   28 U.S.C. § 1655.   Sehman assets that the Bankruptcy Estate, acting through him as

Trustee of the Estate, is so moving within one year for the benefit of all creditors in the pending bankruptcy case of *In re Christopher Sehman*, Case No. 21br30131-KKS.

4 Dakota's Position

4 Dakota's primary argument in response to Sehman's motion appears to be that Sehman was represented by counsel at the time 4 Dakota filed its motion for assignment, and having failed to respond, move for rehearing or appeal, Sehman cannot now seek relief pursuant to Rule 60(b). While Sehman's failure to respond is troubling, the allegations and issues raised by the motion to vacate cannot be easily dismissed, particularly when viewed in conjunction with the bankruptcy judge's recently entered "Findings of Fact and Conclusions of Law in Support of Order Granting Debtor's Motion for Sanctions for Violation of the Automatic Stay." N.D. Fla. Bankr. Case 21-30141, ECF No. 98 (August 10, 2021).

4 Dakota dismisses Sehman's suggestion that it is Schweizer's alter ego as "nothing more than an irrelevant and unsupported argument of counsel." ECF No. 136 at 5. The evidence presented by Sehman is suggestive, if not probative of an overlap between Schweizer and 4 Dakota and a potential conflict of interest. Furthermore, it appears that the bankruptcy court has already heard some evidence

on this issue, and is poised to, and is in a better position to, fully address this question at a later time.    *See* N.D. Fla. Bankr. Case 21-30141, ECF No. 85 at 1, 2.

Next, 4 Dakota asserts that its judgment lien certificate had not expired at the time it filed its renewed motion.    ECF No. 136 at 5.    However, it offers nothing to support its suggestion that the expiration date of the certificate was somehow tolled by its filing the motion for assignment.

4 Dakota also claims that because the district court's assignment order was entered before Sehman filed for bankruptcy, the Schweizer lawsuit was never part of the bankruptcy estate.    ECF No. 136 at 4-5.    This argument does not address the role 4 Dakota's alleged misrepresentation or misconduct played in entry of the assignment order.    If the assignment order was entered only because of a party's misrepresentations, it would be inequitable to allow that party to benefit from it.

4 Dakota argues in conclusion that proceedings supplementary are equitable in nature and should be given a liberal construction in order to afford a judgment creditor the most complete relief possible.    ECF No. 136 at 8.    It does not address the equity of having failed to provide due process to other creditors.    Common sense dictates that a liberal construction of proceedings supplementary should not allow a

creditor without a priority interest and which arguably has a conflict of interest to benefit from providing incomplete or incorrect information to the court.

Conclusion

The undersigned finds that the only factor weighing against granting the motion is the fact that Sehman was (seemingly) represented by counsel at the time 4 Dakota filed its renewed motion for assignment.   In all other respects the record in this case read in conjunction with the record in the bankruptcy case support granting Sehman's motion to vacate the assignment.   Of great concern to the undersigned is not only that 4 Dakota apparently did not voluntarily disclose the relationship between it and Schweizer, but also that the timing of amendments made to 4 Dakota's filings with the Florida Secretary of State suggest that 4 Dakota was intentionally trying to distance itself from Schweizer at key points in the litigation to disguise their relationship.   Additionally, the proposed order 4 Dakota provided to the district court did not provide notice to other creditors, and it has not adequately addressed the expiration of its lien such that the court could credit its suggestion that it is a "priority lienholder."   Further, although not dispositive of the issue of bad faith in this case, 4 Dakota and its attorneys were sanctioned by the bankruptcy court for willful stay violations, specifically, the position and actions taken before the state

court in arguing that the state court did not have to honor the bankruptcy stay.  *See*
N.D. Fla. Bankr. Case 21-30141, ECF Nos. 85, 98.   And, as noted by the bankruptcy
court, 4 Dakota failed to mention the bankruptcy court's May 4, 2021, oral ruling
granting the motion for sanctions or the stay order entered on May 7, 2021 in its
response in opposition to Sehman's motion to vacate.   N.D. Fla. Bankr. Case 21-
3041, ECF No. 98 at 9.

The bankruptcy court has jurisdiction over and is a better position to consider
the proper management of the Schweizer lawsuit, as well as whether any additional
sanctions against 4 Dakota and its attorneys Robert O. Beasley and Dewitt D. Clark
or the law firm of Litvak Beasley Wilson & Ball LLP may be appropriate.   The
undersigned recommends that Sehman's motion to vacate the order of assignment
be granted, and in the interest of judicial economy, any additional matters remaining
regarding the Schweizer lawsuit be handled by the bankruptcy court.

Accordingly, it is respectfully **RECOMMENDED**:

Defendant "Sehman's Motion to Vacate Orders Granting Motion for
Assignment" (ECF No. 134) be **GRANTED.**

At Pensacola, Florida this 9th day of September, 2021.


/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**


## <u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>  An objecting party must serve a copy of its objections on all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.


Case No.:   3:15cv51/MCR/EMT